**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADORERS OF THE BLOOD OF CHRIST, UNITED STATES PROVINCE, N/K/A ADORERS OF THE BLOOD OF CHRIST, UNITED STATES REGION, SUCCESSOR BY MERGER TO ADORERS OF THE BLOOD OF CHRIST, PROVINCE OF COLUMBIA, PA, INC., F/K/A SAINT JOSEPH CONVENT MOTHERHOUSE OF THE ADORERS OF THE BLOOD OF CHRIST, COLUMBIA, PENNSYLVANIA, INC., ALSO F/K/A SAINT JOSEPH'S CONVENT, MOTHER HOUSE OF SISTER ADORERS OF THE MOST PRECIOUS BLOOD, COLUMBIA, PA, A/K/A SISTERS ADORERS OF THE MOST PRECIOUS BLOOD, ST. JOSEPH CONVENT, COLUMBIA, PA, et al., | : : : : : : : : : : : : : : : : : : : | CIVIL ACTION – LAW<br><br>Docket No. <u>5:20-cv-05627-JLS</u> |
| Plaintiffs, | : : | |
| v. | : : | |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : : : | |
| Defendant. | : : | |

## <u>DEFENDANT TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

Pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Transcontinental Gas Pipe Line Company, LLC ("Transco"), by and through its undersigned counsel, respectfully moves this Court to dismiss the Complaint filed by Plaintiffs in the above-captioned proceeding with prejudice as follows: (1) for lack of jurisdiction, as this Court previously determined – and the U.S. Court of Appeals for the Third Circuit affirmed – in <u>Adorers of the Blood of Christ v. FERC</u>, 283 F. Supp. 3d 342 (E.D. Pa. 2017), <u>aff'd</u>, 897 F.3d

187 (3d Cir. 2018), <u>cert. denied</u>, 139 S. Ct. 1169 (2019) ("<u>Adorers I</u>"); and (2) for failure to state a claim.

For each of reasons set forth in the accompanying Memorandum of Law (which is incorporated herein as if set forth in full), Transco's Motion should be granted and an Order entered by the Court in the form proposed.

Respectfully submitted,

Dated:  December 9, 2020

**SAUL EWING ARNSTEIN & LEHR LLP**

s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esq. (PA55808)
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087-5569
(610) 251-5062
<u>Elizabeth.Witmer@saul.com</u>

Sean T. O'Neill, Esq. (PA205595)
Albert F. Moran, Esq. (PA318683)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7159
<u>Sean.Oneill@saul.com</u>
<u>Albert.Moran@saul.com</u>

*Attorneys for Defendant Transcontinental Gas Pipe Line Company, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADORERS OF THE BLOOD OF CHRIST, UNITED STATES PROVINCE, N/K/A ADORERS OF THE BLOOD OF CHRIST, UNITED STATES REGION, SUCCESSOR BY MERGER TO ADORERS OF THE BLOOD OF CHRIST, PROVINCE OF COLUMBIA, PA, INC., F/K/A SAINT JOSEPH CONVENT MOTHERHOUSE OF THE ADORERS OF THE BLOOD OF CHRIST, COLUMBIA, PENNSYLVANIA, INC., ALSO F/K/A SAINT JOSEPH'S CONVENT, MOTHER HOUSE OF SISTER ADORERS OF THE MOST PRECIOUS BLOOD, COLUMBIA, PA, A/K/A SISTERS ADORERS OF THE MOST PRECIOUS BLOOD, ST. JOSEPH CONVENT, COLUMBIA, PA, et al., | : : : : : : : : : : : : : : : : : : | CIVIL ACTION – LAW <br><br> Docket No. <u>5:20-cv-05627-JLS</u> |
| Plaintiffs, | : : | |
| v. | : : : | |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : : : : | |
| Defendant. | : : | |

**O R D E R**

     **AND NOW** this _____ day of _____, 2020, upon consideration of Defendant Transcontinental Gas Pipe Line Company, LLC's Motion to Dismiss Complaint, and any opposition thereto, it is hereby **ORDERED** as follows:

    1.    Defendant's Motion is **GRANTED**;

    2.    Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE**; and

    3.    The Clerk of Court is directed to mark this matter **CLOSED**.

BY THE COURT:

_____

The Honorable Jeffrey L. Schmehl, U.S.D.J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADORERS OF THE BLOOD OF CHRIST, UNITED STATES PROVINCE, N/K/A ADORERS OF THE BLOOD OF CHRIST, UNITED STATES REGION, SUCCESSOR BY MERGER TO ADORERS OF THE BLOOD OF CHRIST, PROVINCE OF COLUMBIA, PA, INC., F/K/A SAINT JOSEPH CONVENT MOTHERHOUSE OF THE ADORERS OF THE BLOOD OF CHRIST, COLUMBIA, PENNSYLVANIA, INC., ALSO F/K/A SAINT JOSEPH'S CONVENT, MOTHER HOUSE OF SISTER ADORERS OF THE MOST PRECIOUS BLOOD, COLUMBIA, PA, A/K/A SISTERS ADORERS OF THE MOST PRECIOUS BLOOD, ST. JOSEPH CONVENT, COLUMBIA, PA, et al., | : : : : : : : : : : : : : : : : : | CIVIL ACTION – LAW<br><br>Docket No. 5:20-cv-05627-JLS |
| Plaintiffs, | : : | |
| v. | : : | |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : : : | |
| Defendant. | : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT. ......................................................1

II.   RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND. ..................4

    A.   Plaintiffs' First RFRA Action Dismissed for Lack of Jurisdiction; Supreme Court Refuses to Review. ...............................................................................................4

    B.   Plaintiffs Seek RFRA Damages in the Related Condemnation Action. ..................6

    C.   Third Attempt by Plaintiffs to Recover Under RFRA. ............................................7

    D.   Background: the Project, the FERC Order, and Public Participation. .....................9

III.   ARGUMENT. .............................................................................................................10

    A.   This Court Lacks Subject-Matter Jurisdiction Over this Action. ..........................10

        1.   Standard of Review .....................................................................................10

        2.   The NGA Vests Exclusive Jurisdiction Over All Matters Inhering in Natural Gas Pipeline Certificate Proceedings Before FERC. ....................11

        3.   Plaintiffs Bring a Second Collateral Attack on FERC's Routing Decision, Which Inheres in Long-Concluded FERC Order Proceedings, But this Court Lacks Jurisdiction. ...........................................................................14

        4.   Plaintiffs Cannot Manufacture Jurisdiction by Seeking Damages, as Opposed to Injunctive Relief, in this Action. .............................................17

    B.   Plaintiffs' RFRA Claim Fails on the Merits as a Matter of Law. ..........................19

        1.   Legal Standard for Rule 12(b)(6) Motions. ...............................................20

        2.   Even Accepting All of Plaintiffs' Allegations as True, There Has Been No "Substantial Burden" on Their Religious Exercise. .................................21

        3.   The Construction of the Project on Plaintiffs' Property Was the Least Restrictive Means of Furthering a Compelling Government Interest. ......23

    C.   Alternatively, Plaintiffs' Request for Punitive Damages Should Be Stricken, or Otherwise Dismissed. ..........................................................................................25

IV.   CONCLUSION. ..........................................................................................................25

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Acosta v. Wolf,
    No. 20-5541, 2020 WL 6682304 (E.D. Pa. Nov. 12, 2020) ...................................................17

Adorers of the Blood of Christ v. FERC,
    283 F. Supp. 3d 342 (E.D. Pa. 2017) .........................................................................1, 2, 5, 12

Adorers of the Blood of Christ v. FERC,
    897 F.3d 187 (3d Cir. 2018) ....................................................................................*passim*

Adorers of the Blood of Christ v. FERC,
    139 S. Ct. 1169 (2019)...............................................................................................1, 3, 6, 17

Agcaoili v. Wiersielis,
    273 F. App'x 138 (3d Cir. 2008) ...............................................................................17

Allegheny Def. Project v. FERC,
    964 F.3d 1 (D.C. Cir. 2020)........................................................................................10, 24

Am. Energy Corp. v. Rockies Express Pipeline LLC,
    622 F.3d 602 (6th Cir. 2010) ....................................................................................12

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)...................................................................................................20

Berkley v. Mountain Valley Pipeline, LLC,
    No. 7:17-cv-00357, 2017 WL 6327829 (W.D. Va. Dec. 11, 2017) ............................11, 16, 18

Bromwell v. Michigan Mut. Ins. Co.,
    115 F.3d 208 (3d Cir. 1997)........................................................................................17

Consol. Gas Supply Corp. v. FERC,
    611 F.2d 951 (4th Cir. 1979) .....................................................................................12

Fowler v. U.P.M.C. Shadyside,
    578 F.3d 203 (3d Cir. 2009)........................................................................................20

Huck on Behalf of Sea Air Shuttle Corp. v. Dawson,
    35 V.I. 560 (3d Cir. 1997)...........................................................................................17

Hunter v. FERC,
    569 F. Supp. 2d 12 (D.D.C. 2008)..............................................................................12-13

Ieradi v. Mylan Labs., Inc.,
    230 F.3d 594 (3d Cir. 2000)........................................................................................20

Iqbal v. Ashcroft,
    556 U.S. 663 (2009)..................................................................................20

Lovelace v. United States,
    No. 15-cv-30131, 2016 WL 10826764 (D. Mass. Feb. 18, 2016).........................11-12, 16, 18

Lyng v. Nw. Indian Cemetery Protective Ass'n,
    485 U.S. 439 (1988)..............................................................................22, 23

Mack v. Loretto,
    839 F.3d 286 (3d Cir. 2016)..................................................................18

Mayer v. Belichick,
    605 F.3d 223 (3d Cir. 2010)..................................................................20

Me. Council of Atl. Salmon Fed'n v. Nat'l Marine Fisheries Serv.,
    858 F.3d 690 (1st Cir. 2017)..................................................................13

Mortensen v. First Fed. Sav. & Loan Ass'n,
    549 F.2d 884 (3d Cir. 1977)..............................................................10, 11

Navajo Nation v. U.S. Forest Serv.,
    535 F.3d 1058 (9th Cir. 2008) ......................................................21, 22, 23

New Jersey Conservation Found. v. FERC,
    353 F. Supp. 3d 289 (D.N.J. 2018) ......................................................19

Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.,
    867 F.3d 338 (3d Cir. 2017)..................................................................21

Smith v. Wade,
    461 U.S. 30 (1983)..................................................................................25

Sossamon v. Texas,
    563 U.S. 277 (2011)..................................................................................18

Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers,
    239 F. Supp. 3d 77 (D.D.C. 2017) ......................................................21, 22, 23

Steckman Ridge GP, LLC v. An Exclusive Nat. Gas Storage Easement,
    No. 08-168, 2008 WL 4346405 (W.D. Pa. Sept. 19, 2008)..........................24

Tanvir v. Tanzin,
    894 F.3d 449 (2d Cir. 2018)..................................................................18

Telecomms. Res. & Action Ctr. v. FCC,
    750 F.2d 70 (D.C. Cir. 1984) ..................................................................13

Thunder Basin Coal Co. v. Reich,
    510 U.S. 200 (1994)...................................................................2, 19

Town of Dedham v. FERC,
    No. 15-12352, 2015 WL 4274884 (D. Mass. July 15, 2015) ...................................12

Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres,
    No. 4:17-cv-00289, 2017 WL 1105237 (M.D. Pa. Mar. 24, 2017) ......................16, 24

Transcon. Gas Pipe Line Co., LLC v. Permanent Easements for 2.14 Acres,
    907 F.3d 725 (3d Cir. 2018).........................................................24

U.S. ex rel. Atkinson v. Pa. Shipbuilding Co.,
    473 F.3d 506 (3d Cir. 2007).........................................................11

United States ex rel. Spay v. CVS Caremark Corp.,
    913 F. Supp. 2d 125 (E.D. Pa. 2012) ...................................................20

Urban v. FERC,
    No. 5:17-cv-01005, 2017 WL 6461823 (N.D. Ohio Dec. 19, 2017) ......................11

USG Pipeline Co. v. 1.74 Acres,
    1 F. Supp. 2d 816 (E.D. Tenn. 1998) ..............................................16, 24

Williams Nat. Gas Co. v. City of Okla. City,
    890 F.2d 255 (10th Cir. 1989) ....................................................12, 13

Woodrow v. FERC,
    No. 20-6, 2020 WL 2198050 (D.D.C. May 6, 2020)...................................16

Ziglar v. Abbasi,
    137 S. Ct. 1843 (2017)...............................................................18

**FEDERAL STATUTES**

Natural Gas Act, 15 U.S.C. § 717f(h)...........................................................15

Natural Gas Act, 15 U.S.C. § 717r ........................................................11, 12

Natural Gas Act, 15 U.S.C. § 717r(a) ...........................................................2

Natural Gas Act, 15 U.S.C. § 717r(b) .......................................................2, 13

Religious Freedom Restoration Act, 42 U.S.C. § 2000bb-1...................................14, 24

Federal Rule of Civil Procedure 12(b)(1) ......................................................10

Federal Rule of Civil Procedure 12(b)(6) ....................................................3, 20

Federal Rule of Evidence 201 ........................................................................................................20

**STATE STATUTES**

Pennsylvania Eminent Domain Code, 26 Pa. C.S. § 701 ...............................................................7

Pennsylvania Eminent Domain Code, 26 Pa. C.S. § 702 ...............................................................7

Pennsylvania Eminent Domain Code, 26 Pa. C.S. § 714 ...............................................................7

Defendant Transcontinental Gas Pipe Line Company, LLC ("Transco") respectfully submits this Memorandum of Law in support of its Motion to Dismiss Plaintiffs' Complaint.

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

Two years ago, the U.S. Court of Appeals for the Third Circuit affirmed this Court's dismissal of the first Religious Freedom Restoration Act ("RFRA") claim against Transco asserted by Plaintiffs – a Roman Catholic religious order called the Adorers of the Blood of Christ ("the Adorers"), and several individual sisters – in Adorers of the Blood of Christ v. FERC, 283 F. Supp. 3d 342 (E.D. Pa. 2017), aff'd, 897 F.3d 187 (3d Cir. 2018), cert. denied, 139 S. Ct. 1169 (2019) ("Adorers I"). Plaintiffs have filed essentially the same Complaint again, simply changing the relief sought from injunctive relief to damages. Plaintiffs, however, cannot create jurisdiction where none exists by changing the relief sought, and their new Complaint must also be dismissed.

In addition to the compensation the Adorers will recover in the related condemnation action captioned Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 1.02 Acres, No. 17-1725 (E.D. Pa.) (the "Condemnation Action"), Plaintiffs now seek damages in connection with Transco's alleged "action in placing the Pipeline in to service using the Adorers' land [that] caused a substantial burden to the religious exercise of the Adorers in violation of RFRA by forcing them to use their own land, which they hold in sacred trust as God's creation, to facilitate the extraction, transportation and use of fossil fuels . . . ." Complaint ¶ 111. It is undisputed that Transco's pipeline (the "Project") was constructed and is being operated pursuant to a Certificate of Public Convenience and Necessity (the "FERC Order"[1]) issued to Transco by the Federal Energy Regulatory Commission ("FERC") in 2017. The pipeline route across one parcel of

---

[1]    *Transcon. Gas Pipe Line Co., LLC*, 158 FERC ¶ 61,125 (Feb. 3, 2017).

property owned by the Adorers and used as a farm field (the "Property") was approved by FERC in the FERC Order.  It is also undisputed that Plaintiffs did not participate in the extensive public process that led to the issuance of that FERC Order, nor did they seek rehearing at FERC or appeal the FERC Order.  See Adorers I, 283 F. Supp. 3d at 345 ("Having failed to do so, [P]laintiffs are barred by 15 U.S.C. §§ 717r(a) and 717r(b) from pursuing what amounts to collateral review of the FERC Order before this Court.").  The Project has been in operation for over two years, and Plaintiffs' new challenge is untimely and inappropriate.

In Adorers I, Plaintiffs claimed that their religious exercise would be substantially burdened by "FERC's action in issuing the FERC Order approving and authorizing Transco to forcibly take and use land owned by the Adorers for a fossil fuel pipeline," and that the FERC-approved routing of the Project through their Property was not the least restrictive means of furthering a compelling government interest.  See Adorers I Am. Complaint (attached hereto as Exhibit A) ¶¶ 54, 84-85, 90-92, 96-98.  This Court dismissed Adorers I for lack of subject-matter jurisdiction, and the Third Circuit affirmed in a precedential decision, concluding that the Natural Gas Act's ("NGA") "highly reticulated" review process required Plaintiffs to exhaust their remedies before FERC, and that they could then seek review in a federal court of appeals, which would have "exclusive" jurisdiction to "affirm, modify, or set aside" FERC certificate orders.  See Adorers I, 897 F.3d at 194-95 (quoting 15 U.S.C. 717r(b)).  "By failing to avail themselves" of the NGA's review procedure, Plaintiffs "foreclosed judicial review of their substantive RFRA claims."  Adorers I, 897 F.3d at 195.  Alternatively, the Third Circuit found that Congress's intent to vest jurisdiction exclusively in the federal courts of appeals is "fairly discernable" in the NGA under the test articulated in Thunder Basin Coal Co. v. Reich, 510 U.S. 200 (1994).  Plaintiffs could have raised their objections at FERC, and if not successful there,

could have obtained "meaningful judicial review" in an appropriate court of appeals.  See Adorers I, 897 F.3d at 195.  If Plaintiffs had been successful in their administrative challenge, the FERC Order would have been "modified or set aside."  See id.  Plaintiffs would then not have been entitled to any relief under RFRA.  Plaintiffs sought review of the Third Circuit's decision, and the Supreme Court declined to grant Plaintiffs a writ of certiorari.  139 S. Ct. 1169.

Five months after the Adorers' second attempt to recover RFRA damages by seeking to include such damages among the damages sought in the Condemnation Action (without stating a separate claim for them) was rebuffed by this Court, Plaintiffs filed this action, in which they take a third bite at the RFRA apple.  The gravamen of Plaintiffs' claim – that FERC's decision to approve the Project route through the Property violated their religious beliefs – continues to inhere in the FERC Order (which approved the Project route) and is the same jurisdictionally impermissible collateral attack on the FERC Order.  While Plaintiffs seek damages – as opposed to an injunction – in this Complaint, a change in the relief sought cannot create a basis for jurisdiction.  This is particularly true where, as here, jurisdiction has already been rejected, and Plaintiffs could have obtained the "appropriate relief" guaranteed in RFRA had they complied with the NGA's process and convinced FERC (or a federal court of appeals) to change the Project route based on their religious objections.  Plaintiffs' grievance with the Project has been the same all along – they cannot manufacture jurisdiction by simply seeking a different remedy.

Even if this Court could conclude that it has subject-matter jurisdiction over Plaintiffs' RFRA claim, the claim also fails on the merits and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, even if this Court accepts the factual allegations pled in Plaintiffs' Complaint as true, Plaintiffs' claim fails as a matter of law for two reasons.

First, Plaintiffs cannot show that their religious exercise has been "substantially

burdened" by Transco, which is a required element under RFRA.  While Plaintiffs claim that they were forced to use the Property to "facilitate the extraction, transportation and use of fossil fuels," <u>see</u> Complaint ¶ 111, they ignore the dispositive fact that Transco – not Plaintiffs – constructed and operates the Project.  Thus, Plaintiffs, who are not being affirmatively forced to do anything, are impacted by the Project only in a passive sense, and courts have squarely rejected the notion that such passive impacts constitute a "substantial burden" under RFRA.

*Second*, RFRA contains an exception that defeats Plaintiffs' claim.  RFRA provides that a state actor[2] may substantially burden a person's exercise of religion if it demonstrates the burden (1) is in the furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that interest.  Here, FERC already decided Transco's Project was in the public interest and approved the proposed route, which intersected the Adorers' Property, as minimally disruptive.  Because FERC has made these determinations and the NGA appeal process has ended, Plaintiffs cannot challenge them now, as decided in <u>Adorers I</u>.

Finally, in the alternative and in any event, this Court should strike Plaintiffs' request for punitive damages, as Plaintiffs have not alleged, and cannot allege, any outrageous or callous conduct on the part of Transco that would be required to sustain a claim for punitive damages.

## II.    <u>RELEVANT PROCEDURAL HISTORY AND FACTUAL BACKGROUND.</u>

### A.    <u>Plaintiffs' First RFRA Action Dismissed for Lack of Jurisdiction; Supreme Court Refuses to Review</u>.

In July 2017, Plaintiffs filed a Complaint in this Court against FERC seeking to enjoin construction of the Project.  <u>See</u> No. 17-3163, Dkt. No. 1.  Plaintiffs later filed an Amended Complaint adding Transco as a party to the <u>Adorers I</u> action.  <u>See id.</u>, Dkt. No. 10.  Transco and

---

[2]     Transco assumes *arguendo* at this stage that it is a "state actor" subject to RFRA due to its usage of the power of eminent domain.  Transco reserves the right to contest its status as a "state actor" should this Court allow Plaintiffs' claim to proceed.

FERC both moved to dismiss Plaintiffs' claims for lack of subject-matter jurisdiction, arguing that the claims were barred under the NGA because Plaintiffs were in effect challenging the FERC Order, and any challenge to a FERC Order lies exclusively in the federal courts of appeals under the NGA and not with the federal district courts.  See id., Dkt. Nos. 13, 15.

This Court granted Transco's and FERC's motions to dismiss in September 2017.  See Adorers I, 283 F. Supp. 3d at 345-47 (finding that due to Plaintiffs' failure to follow the NGA's "highly reticulated procedure" for challenging certificate orders from FERC, they were barred from bringing their RFRA claim under the general jurisdictional statutes).

Plaintiffs appealed this Court's dismissal of the Adorers I Complaint, and a Third Circuit panel unanimously affirmed this Court's decision via a precedential Opinion on July 25, 2018. Adorers I, 897 F.3d at 190 ("We . . . hold that a RFRA cause of action, brought by invoking a court's general federal question jurisdiction, does not abrogate or provide an exception to a specific and exclusive jurisdictional provision prescribing a particular procedure for judicial review of an agency's action.").  Notably, the Third Circuit recounted and emphasized Plaintiffs' repeated failures to participate in the FERC administrative proceedings (summarized below in Section II.D), whereby they failed to submit any comments to FERC or publicly voice any opposition to the Project, and "did not object, appeal or seek rehearing regarding any order related" to Transco's condemnation of their Property to construct the Project.  See id. at 190-92. Given these failures, the Third Circuit concluded as follows:

> If the Adorers had participated in the administrative process, FERC may have denied or modified the conditions of Transco's certificate.  Or, if FERC failed to do so, the reviewing court of appeals may have ruled in the Adorers' favor.  Under these circumstances, the Adorers would have, at the very least, had the opportunity to seek the relief they so desire today. But because they failed to engage with the NGA's procedural regime, we are without jurisdiction to hear the Adorers' claims.

5

Id. at 198 (footnotes omitted).

The Third Circuit rejected various arguments by Plaintiffs that they could not effectively seek RFRA relief in the context of the NGA's administrative process.  Certain of these arguments are germane to the instant action and are discussed below.

*First*, the Third Circuit squarely rejected Plaintiffs' claim that RFRA's status as a "super-statute" preempted the NGA's jurisdictional provisions.  The court determined that despite Plaintiffs' efforts to cast the statutes as conflicting, there was no conflict because RFRA did not "specifically confer jurisdiction to the federal district courts to hear RFRA claims."  Id. at 194. The Third Circuit thus concluded that the NGA's procedural regime controlled.  Id. at 195.

*Second*, the Third Circuit disagreed with Plaintiffs' claims that "even if they had indulged the administrative process, they could not have asserted their rights under RFRA within the NGA because they would have had to have anticipated a possible RFRA violation . . . ."  See id. at 197 (citation and internal quotations omitted).  The Third Circuit instead found that "FERC may hear any claim raised before it – even potential violations of federal law," and if Plaintiffs disagreed with FERC's adjudication of their claim, they had "the opportunity for direct appeal before a federal court of appeals."  Id.

Following the Third Circuit's decision, Plaintiffs filed a petition for certiorari with the Supreme Court; this petition was denied in February 2019.  See 139 S. Ct. 1169.

## B.      **Plaintiffs Seek RFRA Damages in the Related Condemnation Action.**

In February 2017, Transco initiated the Condemnation Action by filing a condemnation Complaint against the Adorers, and thereafter filed a Notice of Condemnation in April 2017. See No. 17-1725 (Dkt. No. 1).  Both documents were served on April 21, 2017.  Id., Dkt. No. 6. Transco filed a Motion for Partial Summary Judgment pertaining to its right to condemn the

Property on May 15, 2017, which was served via Federal Express on the same day.  Id., Dkt. No. 7.  The Adorers failed to answer the Complaint or respond to the Motion for Partial Summary Judgment.  After an evidentiary hearing (id., Dkt. No. 15), this Court granted Transco's Motion for Partial Summary Judgment on July 7, 2017.  Id., Dkt. No. 16.

After Transco's right to condemn the Property was established, the question of the compensation due to the Adorers for Transco's taking remained, and the parties are presently engaged in discovery regarding that issue.  Under the Pennsylvania Eminent Domain Code, the compensation to be awarded to the Adorers consists of the difference between the objective fair market value of the Property before and after Transco's taking, and, if applicable, three narrow categories of consequential damages.  See 26 Pa. C.S. §§ 701, 702, 714. The Adorers nevertheless filed a motion to recover RFRA damages in the compensation proceeding in November 2019, after the Adorers I appeals concluded.  See Condemnation Action, Dkt. No. 42. This Court dismissed that claim with prejudice on June 25, 2020, holding that RFRA damages are not recoverable under the Pennsylvania Eminent Domain Code.  See id., Dkt. No. 48.

### C.      Third Attempt by Plaintiffs to Recover Under RFRA.

On November 11, 2020, Plaintiffs commenced this action by filing a substantively identical Complaint to that filed in Adorers I.  In pertinent part, Plaintiffs now allege as follows:

> 108.  As Transco's construction of the pipeline neared completion in the summer of 2018, counsel for the Adorers sent a letter to Transco dated August 31, 2018, urging Transco not to commence natural gas service through the Adorers' Property and specifically advising that the Adorers intended to seek damages should that occur. . . .

> 109.  Transco placed the pipeline in to service on or around October 4, 2018, after receiving final authorization from FERC.

> 110.  Natural gas presently is flowing through the Adorers' Property in direct violation of the Adorers' religious practice and sincerely-held beliefs.

111. Transco's action in placing the Pipeline in to service using the Adorers' land caused a substantial burden to the religious exercise of the Adorers in violation of RFRA by forcing them to use their own land, which they hold in sacred trust as God's creation, to facilitate the extraction, transportation and use of fossil fuels that will accelerate global warming and cause great harm to the Earth.

112. Transco's use, day after day, of the Adorers' property in violation of their deeply held religious beliefs represents a continuing violation of their religious practice because it facilitates harm to the Earth for as long as the Pipeline remains in operation.

113. Transco's action to condemn and use the Adorers' Property is in furtherance of its for-profit business interest in exporting natural gas to international markets for private financial gain and is not a compelling government interest.

114. The burden on the Adorers' and Sisters' religious practice is not the least restrictive means for furthering any governmental or private pecuniary interest in the Pipeline because Transco already had existing pipeline infrastructure . . ., and in any event, the Pipeline could have been routed around the Adorers' Property as has been done in numerous other instances.

. . . .

123. Transco acted under color of federal law when it condemned the Adorers' Property and then proceeded to install, construct, and operate a 42" fossil fuel Pipeline; accordingly, Transco constitutes the "Government" as defined and used in RFRA.

124. Transco's action to forcibly condemn, construct and operate a high-volume natural gas pipeline on land owned by the Adorers substantially burdened the Adorers' and Sisters' exercise of their deeply-held religious beliefs to use and protect their land as part of God's creation . . . .

See Compl. ¶¶ 108-114, 123-124; compare with Adorers I Am. Complaint (Ex. A) ¶¶ 83-84, 90, 95-96 (alleging similar purported RFRA harms arising from FERC's approval of the routing of the Project through the Adorers' Property).

Aside from updates to the factual chronology preceding the Project's placement into service, the only key difference between the claims against Transco in <u>Adorers I</u> and this action is the relief sought.  In this Complaint, Plaintiffs seek compensatory and punitive damages (<u>see</u> Complaint at WHEREFORE clause), whereas before, Plaintiffs sought to enjoin construction of the Project.  <u>See Adorers I</u> Am. Complaint (Ex. A) at WHEREFORE Clause.

### D.   <u>Background: the Project, the FERC Order, and Public Participation</u>.

The facts regarding Transco's Project are recited in the Third Circuit's Opinion in <u>Adorers I</u>, <u>see</u> 897 F.3d at 190-92, and in the FERC Order referenced in Plaintiffs' Complaint. The Project has been operating for two years and is an interstate natural gas pipeline.  <u>See</u> FERC Order ¶¶ 5-6.  Construction of the Project was completed in September 2018 and the Project became operational on October 6, 2018.[3]

The FERC Order specifically found that "the public convenience and necessity requires approval" of the Project, which is designed to meet the growing demand for natural gas in the Mid-Atlantic and Southeastern markets.  FERC Order ¶¶ 29, 33.  As part of the hearing process on the application for the Project, FERC evaluated the public need for the Project (referred to as the "public convenience and necessity" under Section 7(c) of the NGA), and completed a thorough review of environmental impacts and operational considerations before issuing the FERC Order authorizing the Project.  <u>See generally</u> FERC Order.

During the FERC administrative process, there were multiple opportunities for affected landowners to comment on, and object to, the Project.  <u>Compare</u> FERC Order ¶ 69 (describing

---

[3]      <u>See</u> Accession No. 20181004-3012, Letter order granting Transco's request to place facilities into service (Oct. 4, 2018), <u>available on</u> FERC's eLibrary in Docket Number CP15-138-000, https://www.ferc.gov/docs-filing/elibrary.asp;  Accession No. 20181009-5045, Notification of Placement into Service (Oct. 9, 2018), <u>available on</u> FERC's eLibrary in Docket Number CP15-138-000, https://www.ferc.gov/docsfiling/elibrary.asp.

comments provided at Project scoping meetings) <u>with</u> <u>Adorers I</u>, 897 F.3d at 191 ("The Adorers did not provide a written comment or attend any one of these meetings."); <u>compare</u> FERC Order ¶ 70 (describing FERC mailings to potentially impacted landowners inviting comments) <u>with</u> <u>Adorers I</u>, 897 F.3d at 191 ("Among the recipients of the October 22, 2015 letter were the Adorers, who failed to respond to the letter."); <u>compare</u> FERC Order ¶ 72 (describing solicitation of comments on draft Environmental Impact Statement for Project) with <u>Adorers I</u>, 897 F.3d at 192 ("The Adorers failed to provide a comment or otherwise participate in any of these fora."); <u>see also</u> FERC Order ¶ 73 (describing FERC's October 2016 letter to landowners potentially affected by alternative pipeline routes and comments, none of which were from Plaintiffs).

Certain affected landowners and interested parties intervened in the FERC proceedings, or submitted various comments to FERC regarding the Project. <u>See generally</u> FERC Order. Plaintiffs failed to intervene in the FERC proceedings or submit any comments to FERC. <u>See</u> <u>Adorers I</u>, 897 F.3d at 190-92. Plaintiffs also did not, and could not, appeal the FERC Order because they failed to participate in the FERC process. <u>See</u> <u>id.</u> at 198. All appeals of the FERC Order have now been resolved. <u>See</u> <u>Allegheny Def. Project v. FERC</u>, 964 F.3d 1, 19 (D.C. Cir. 2020) (denying final four outstanding petitions for review regarding Project).

## III.   <u>ARGUMENT.</u>

### A.   <u>This Court Lacks Subject-Matter Jurisdiction Over this Action</u>.

#### 1.   **Standard of Review.**

Federal Rule of Civil Procedure 12(b)(1) permits courts to dismiss actions in which federal subject-matter jurisdiction is lacking. Fed. R. Civ. P. 12(b)(1). A district court has "substantial authority" to "weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" See <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)). Thus, in evaluating a motion to dismiss under Rule 12(b)(1) that challenges the court's

"very power to hear the case," the court may consider and weigh evidence outside the pleadings as it deems appropriate to resolve the question of whether it has subject-matter jurisdiction.  See id.; U.S. ex rel. Atkinson v. Pa. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007). As to these sorts of factual challenges to the court's jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." Mortensen, 549 F.2d at 891.

### 2.     The NGA Vests Exclusive Jurisdiction Over All Matters Inhering in Natural Gas Pipeline Certificate Proceedings Before FERC.

As the Third Circuit held in Adorers I, under Section 19 of the NGA, 15 U.S.C. § 717r, the United States Courts of Appeals have **exclusive jurisdiction** to review **all** matters inhering in natural gas pipeline certificate proceedings before FERC.  See Adorers I, 897 F.3d at 194-95. RFRA's text does not "specifically confer jurisdiction to the federal district courts to hear RFRA claims," or otherwise "abrogate or provide an exception to [the] specific and exclusive jurisdictional provision prescribed by Congress" in the NGA for judicial review of FERC orders. See id. at 194, 198.  The Third Circuit found that the NGA's "procedural requirements, which permit parties to seek review in a court of appeals following an initial agency hearing, qualify as a 'judicial proceeding' under RFRA."  Id. at 194 n.6.  Every other court that has considered a similar question has concluded that claims of the kind at issue here must be brought before FERC and then asserted in the appropriate court of appeals, not commenced in the district court in the first instance.  See Berkley v. Mountain Valley Pipeline, LLC, No. 7:17-cv-00357, 2017 WL 6327829, at *5 (W.D. Va. Dec. 11, 2017) (dismissing constitutional challenge to NGA's eminent domain provisions and FERC's review of pipeline certificate application), aff'd, 896 F.3d 624 (4th Cir. 2018), cert. denied, 139 S. Ct. 941 (2019); Urban v. FERC, No. 5:17-cv-01005, 2017 WL 6461823, at *3 (N.D. Ohio Dec. 19, 2017); Lovelace v. United States, No. 15-

cv-30131, 2016 WL 10826764, at *1 (D. Mass. Feb. 18, 2016) (dismissing constitutional challenge to NGA because "it is well established that the [NGA] forecloses judicial review of a FERC certificate in district court") (citation and internal quotation marks omitted); Town of Dedham v. FERC, No. 15-12352, 2015 WL 4274884, at *1-2 (D. Mass. July 15, 2015) (finding court lacked jurisdiction to enjoin construction of pipeline).

Section 19 of the NGA, 15 U.S.C. § 717r, "vests exclusive jurisdiction to review all decisions of the Commission in the circuit court of appeals; there is no area of review, whether relating to final or preliminary orders, available in the district court.  And, this has been the uniform construction given the statute." Consol. Gas Supply Corp. v. FERC, 611 F.2d 951, 957 (4th Cir. 1979) (internal citations omitted); see also Am. Energy Corp. v. Rockies Express Pipeline LLC, 622 F.3d 602, 605 (6th Cir. 2010) ("Exclusive means exclusive, and the [NGA] nowhere permits an aggrieved party otherwise to pursue collateral review of a FERC certificate in state court or federal district court."); Williams Nat. Gas Co. v. City of Okla. City, 890 F.2d 255, 261 (10th Cir. 1989) (emphasizing exclusivity of NGA's review provisions).

The NGA's exclusive jurisdiction provision forecloses district court review of natural gas pipeline certificate proceedings, **whether the litigation arises before or after FERC has issued a certificate order**.  See Adorers I, 283 F. Supp. 3d at 347 ("Plaintiffs' RFRA claims clearly 'inhere in the controversy' between plaintiffs and FERC.  Moreover, plaintiffs would have had an opportunity to present their RFRA claims in a judicial proceeding before the appropriate Court of Appeals had they first sought a rehearing before FERC . . . ."); Am. Energy, 622 F.3d at 605 (making "short work" of plaintiff's efforts to "sidestep" the NGA's judicial review scheme by seeking relief in district court); Consol. Gas, 611 F.2d at 958 (holding that "district court was without jurisdiction to interfere with [FERC's] proceedings"); Hunter v. FERC, 569 F. Supp. 2d

12

12, 15 (D.D.C. 2008) (dismissing action relating to FERC investigation of energy market manipulation because claim was "so intertwined" with FERC order that it "must be construed as an attack" on the order itself); see also Me. Council of Atl. Salmon Fed'n v. Nat'l Marine Fisheries Serv., 858 F.3d 690, 693 (1st Cir. 2017) (Souter, J. (ret.), sitting by designation) ("The Supreme Court has made it clear that the jurisdiction provided by [Federal Power Act, 16 U.S.C. §] 825*l*(b) is 'exclusive,' not only to review the terms of the specific FERC order, but over any issue 'inhering in the controversy.'") (citation omitted); Williams, 890 F.2d at 262 (court "would be hard pressed to formulate a doctrine with a more expansive scope" than section 717r(b), which "preclude[s] *de novo* litigation between the parties of all issues inhering in the controversy") (citation omitted).

As the D.C. Circuit has explained, "where a statute commits review of agency action to the Court of Appeals, any suit seeking relief that might affect the Circuit Court's future jurisdiction is subject to the *exclusive* review of the Court of Appeals." Telecomms. Res. & Action Ctr. v. FCC, 750 F.2d 70, 75 (D.C. Cir. 1984); see also id. at 77 (explaining that, "[b]y lodging review of agency action in the Court of Appeals, Congress manifested an intent that the appellate court exercise sole jurisdiction over the class of claims covered by the statutory grant of review power"); Williams, 890 F.2d at 262-63 (judicial review of "all issues inhering in the controversy" before FERC is confined to the courts of appeals because "coherence and economy are best served if all suits pertaining to designated agency decisions are segregated in particular courts") (citations and quotation marks omitted).

As the Third Circuit held, with respect to this action, Congress expressly foreclosed district court review by vesting exclusive jurisdiction to review actions regarding NGA certificate applications in the federal courts of appeals. See Adorers I, 897 F.3d at 198.

**3.      Plaintiffs Bring a Second Collateral Attack on FERC's Routing Decision, Which Inheres in Long-Concluded FERC Order Proceedings, But this Court Lacks Jurisdiction.**

To obtain any relief under RFRA, whether the injunctive relief they initially sought or the damages they seek now, Plaintiffs would need to prove that the Project was not required by a compelling governmental interest, or that the Project as constructed was not the least restrictive means of furthering the natural gas transmission goals contemplated by the Project.

RFRA provides as follows:

> **(a) In general.**   Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except as provided in subsection (b).

> **(b) Exception.**   Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person—
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

> **(c) Judicial relief.**   A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government. . . .

42 U.S.C. § 2000bb-1.   A party who can state a cognizable RFRA claim is only entitled to "appropriate relief" for violations of the statute.   See id. § 2000bb-1(c).

However, the questions of whether the Project was in furtherance of a compelling governmental interest and the least restrictive means of furthering that interest had to be raised before FERC, such that "FERC may have denied or modified the conditions of Transco's certificate," as the Third Circuit concluded in Adorers I.   See 897 F.3d at 198.

As recited in paragraphs 77-78, 103, and 109 of the Complaint, this action inheres in the FERC Order that authorized the Project.   For example, with regard to the governmental interest, Plaintiffs allege that "Transco's action to condemn and use the Adorers' Property is in

furtherance of its for-profit business interest in exporting natural gas to international markets for private financial gain and is not a compelling government interest."  Complaint ¶ 113.  However, Transco's right to condemn is inherent in the issuance of the FERC Order itself, and a challenge to the right to condemn is thus necessarily a challenge to the FERC Order.  Indeed, the NGA provides that "**[w]hen any holder of a certificate of public convenience and necessity** cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right of way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, . . . **it may acquire the same by the exercise of the right of eminent domain** . . . ."  15 U.S.C. § 717f(h) (emphases added).

Similarly, Plaintiffs' allegation pertaining to the means for the Project – specifically, that "Transco's action to forcibly condemn, construct and operate a high-volume natural gas pipeline on land owned by the Adorers substantially burdened the Adorers' and Sisters' exercise of their deeply-held religious beliefs . . ." (Complaint ¶ 124) – is a collateral attack on the FERC Order, which determined the route of the pipeline, allowed its construction and operation, and determined the need for the Project.  The questions of alternatives to the Project route were considered by FERC at great length, and in fact many route changes were made during the course of the NGA process, as is outlined in the FERC Order and in other documents on the FERC docket, including the Final Environmental Impact Statement ("FEIS") for the Project.  See FERC Order ¶¶ 14, 149-158; see also FEIS, Dec. 30, 2016, available at https://cms.ferc.gov/final-environmental-impact-statement-atlantic-sunrise-project.

As the Third Circuit recognized, Plaintiffs had numerous opportunities to raise such challenges during the administrative process that preceded the FERC Order, but they repeatedly neglected to participate in that process, even though they could have tried to achieve what they

claimed to be their goal both in Adorers I and in this action – rerouting the Project around the Property.  See Adorers I, 897 F.3d at 191-92; Complaint ¶ 114 (alleging that the Project "could have been routed around the [ ] Property).  Having failed to participate in the NGA's process, they cannot now bring what amounts to a collateral attack on the Project route by seeking damages to punish Transco for following the FERC procedure and constructing and operating the pipeline in the only way, and in the only place, approved by the FERC Order.  See id.; Berkley, 2017 WL 6327829, at *4-5; Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres, No. 4:17-cv-00289, 2017 WL 1105237, at *3 (M.D. Pa. Mar. 24, 2017) ("FERC has determined that the Subject Property is necessary to the operation of the Pipeline; this determination cannot be challenged by [d]efendants.") (citations omitted), aff'd, 709 F. App'x 109 (3d Cir. 2017); USG Pipeline Co. v. 1.74 Acres, 1 F. Supp. 2d 816, 821 (E.D. Tenn. 1998).

The allegations in this new Complaint are simply a repeat of Adorers I, and are a collateral attack on the decisions made by FERC in issuing the FERC Order. Plaintiffs' challenge to the Project thus remains subject to the exclusive jurisdiction scheme set forth in the NGA.  Cf. Berkley, 2017 WL 6327829, at *4 ("[P]laintiffs' own complaint . . . make[s] clear that they are concerned not with some abstract constitutional violation, but with the fact that their land will be affected by [the] proposed pipeline."); Lovelace, 2016 WL 10826764, at *1 ("[T]he [NGA] forecloses judicial review of a FERC certificate in district court.").

The exclusive jurisdiction of the Court of Appeals to consider objections to pipeline planning, approval, and construction processes would be entirely undermined if unhappy parties could come to district courts, seeking relief under a statutory theory of alleged wrongdoing.  See Lovelace, 2016 WL 10826764, at *1; see also Woodrow v. FERC, No. 20-6, 2020 WL 2198050, at *6 (D.D.C. May 6, 2020).  Instead, the proper arena for Plaintiffs to seek consideration of their

claims was within the FERC administrative process, and ultimately with the appropriate federal court of appeals. As the Third Circuit found, and the Supreme Court refused to review, Plaintiffs "failed to engage with the NGA's procedural regime," such that this Court continues to lack jurisdiction over their claims. See Adorers I, 897 F.3d at 198; 139 S. Ct. 1169.

### 4. Plaintiffs Cannot Manufacture Jurisdiction by Seeking Damages, as Opposed to Injunctive Relief, in this Action.

Transco anticipates that Plaintiffs will claim that this action is jurisdictionally distinguishable from Adorers I because they seek damages in their Complaint, and that damages were not available through the FERC's administrative process. However, this Court does not need to address whether damages were recoverable in the FERC process here because simply seeking damages, rather than injunctive relief, does not cure the jurisdictional defect.

Plaintiffs cannot manufacture jurisdiction simply by restyling their Complaint's requested relief. See Bromwell v. Michigan Mut. Ins. Co., 115 F.3d 208, 212-13 (3d Cir. 1997) (holding that once the district court determined that it lacked subject-matter jurisdiction over plaintiff's claims, that determination had a preclusive effect); see also Agcaoili v. Wiersielis, 273 F. App'x 138, 139 (3d Cir. 2008) (holding that prior dismissal for lack of subject-matter jurisdiction has a preclusive effect on jurisdictional issue) (citing Bromwell and Okoro v. Bohman, 164 F.3d 1059, 1063 (7th Cir. 1999)); cf. Huck on Behalf of Sea Air Shuttle Corp. v. Dawson, 35 V.I. 560, 568 (3d Cir. 1997) ("Huck argues that since he is pursuing a different remedy in his action . . . , res judicata cannot be applied. . . . We find no injustice when the doctrine of res judicata is properly applied to prevent appellees from being subjected to endless relitigation of issues already decided.") (internal citations and quotation marks omitted); Acosta v. Wolf, No. 20-5541, 2020 WL 6682304, at *4 (E.D. Pa. Nov. 12, 2020) (observing that plaintiff's "request for monetary relief in his second action does not change our analysis" regarding defects underlying claims).

Further, the "appropriate relief" guaranteed by RFRA could have been obtained had Plaintiffs participated in the NGA's process and proven their claim in that context, cf. Berkley, 2017 WL 6327829, at *5 (explaining that constitutional challenges that inhered in FERC order could have been raised in FERC proceedings and before appropriate court of appeals); Lovelace, 2016 WL 10826764, at *1 (same), and RFRA does not guarantee the award of damages.

Rather, courts have held that the "appropriate relief" guaranteed for violations RFRA is context-dependent.  See Tanvir v. Tanzin, 894 F.3d 449, 466 (2d Cir. 2018) (explaining that because "the relevant animating principles [of RFRA] vary appreciably across legal contexts, the meaning of 'appropriate' may well take on different meanings in different settings"); cf. Sossamon v. Texas, 563 U.S. 277, 286 (2011) ("[A]ppropriate relief" is open-ended and ambiguous about what types of relief it includes . . . .  Far from clearly identifying money damages, the word "appropriate" is inherently context dependent.").[4]  Relatedly, as the Supreme Court stated in an analogous context, "if Congress has created any alternative, existing process for protecting the [injured party's] interest that itself may amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."  Ziglar v. Abbasi, 137 S. Ct. 1843, 1858 (2017) (citation and internal quotation marks omitted).

Here, allowing a suit for money damages under RFRA based on the claim that the route of the pipeline – which Plaintiffs did not challenge despite multiple opportunities to do so, as discussed above – should entitle Plaintiffs to money damages different from the just compensation they will receive in the condemnation action is inconsistent with the reticulated

---

[4]     While the Third Circuit held in Mack v. Loretto, 839 F.3d 286 (3d Cir. 2016), that damages are recoverable under RFRA against officers who commit unlawful conduct, Mack does not stand for the proposition that damages are always permitted under RFRA no matter the circumstances.  Because there is no universal guarantee of damages, the NGA and RFRA do not conflict, which makes RFRA's "super-statute" status irrelevant.

process Congress enacted in passing the NGA.  An award of damages here would fundamentally undermine the NGA's deliberative process because it would subject pipeline applicants to attacks arising from FERC's process even when they complied with that process, as Transco did here.

While the Third Circuit observed in dicta in a footnote in Adorers I that "the ability of a RFRA claimant to receive damages through the NGA process may indeed bear on 'whether the claims can be afforded meaningful review'" under Thunder Basin, 510 U.S. at 207, see 897 F.3d at 198 n.11, a Thunder Basin analysis is only necessary if the NGA does not expressly preclude jurisdiction over Plaintiffs' claim.  See New Jersey Conservation Found. v. FERC, 353 F. Supp. 3d 289, 300 (D.N.J. 2018) ("The Thunder Basin legal framework is used to determine whether Congress has *impliedly* precluded jurisdiction in the district courts . . . .") (emphasis in original).  But the Third Circuit has already held that the NGA does expressly preclude jurisdiction here, such that this Court need not undertake a Thunder Basin analysis, see Adorers I, 897 F.3d at 195, and the Third Circuit's dicta regarding the availability of damages is only speculation for another case with another fact pattern.  In any event, as discussed above, RFRA only guarantees "appropriate relief," and Plaintiffs may have attained their goal of rerouting the Project had they participated in the NGA's process, such that their RFRA claim could have been "afforded meaningful review" under that process.

Plaintiffs' RFRA claim is substantively unchanged from Adorers I, and it remains a collateral attack on the FERC Order.  This Court should thus dismiss the claim with prejudice.

### B.   **Plaintiffs' RFRA Claim Fails on the Merits as a Matter of Law.**

Even if this Court concludes that it has jurisdiction over Plaintiffs' claim (as explained above, it does not), Plaintiffs' Complaint still fails as a matter of law and should be dismissed with prejudice for two reasons.  *First*, even if this Court accepts all of the factual allegations pled in Plaintiffs' Complaint as true, Plaintiffs cannot prove that their religious exercise was

substantially burdened as a result of Transco's construction and operation of the Project. *Second*, FERC and the U.S. Court of Appeals for the D.C. Circuit have already determined that the construction of the Project as proposed by Transco was squarely in the public interest.

### 1.    Legal Standard for Rule 12(b)(6) Motions.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege facts that "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal v. Ashcroft, 556 U.S. 663, 678 (2009). Instead, a complaint must contain sufficient factual allegations to state a claim for relief that is facially plausible. Id. While a court must accept all of the complaint's well-pleaded facts as true, a complaint must do more than allege an entitlement to relief; it must "show" an entitlement with its facts. Fowler v. U.P.M.C. Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a Court is free to examine not just the pleadings but any documents attached to or referenced in the pleadings as well. See Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, under Federal Rule of Evidence 201, when ruling on a motion to dismiss, a court may take judicial notice of a fact "not subject to reasonable dispute that is capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned." Ieradi v. Mylan Labs., Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000); see also United States ex rel. Spay v. CVS Caremark Corp., 913 F. Supp. 2d 125, 139 (E.D. Pa. 2012) ("[C]ourts take judicial notice of documents which are matters of public record . . . .") (citation omitted).

###### 2. Even Accepting All of Plaintiffs' Allegations as True, There Has Been No "Substantial Burden" on Their Religious Exercise.

A RFRA plaintiff must prove that: (1) a policy or action implicates her religious exercise; (2) the religious exercise is grounded in a sincerely held religious belief; and (3) the policy or action substantially burdens that exercise.  See, e.g., Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers, 239 F. Supp. 3d 77, 88 (D.D.C. 2017), appeal dismissed, No. 17-5043, 2017 WL 4071136 (D.C. Cir. May 15, 2017).  Whether a burden is "substantial" under RFRA "is a question of law, not a question of fact."  Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs., 867 F.3d 338, 356 (3d Cir. 2017) (citation omitted).  Here, even assuming arguendo that Plaintiffs can establish facts as to elements (1) and (2) of their RFRA claim,[5] the claim fails because Plaintiffs cannot show that Transco's actions "substantially burden" their religious exercise as a matter of law.  Accordingly, Plaintiffs' claim should be dismissed.

Under RFRA, a "substantial burden" is imposed only when individuals are (1) forced to choose between following the tenets of their religion and receiving a government benefit; or (2) coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions.  See id.; Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1069-70 (9th Cir. 2008).  Here, Plaintiffs do not allege that Transco forced them to choose between following the tenets of their religion or receiving a government benefit.  Instead, Plaintiffs attempt to shoehorn their claim into a "coercion" theory, claiming that Transco "forc[ed] them to use their own land, which they hold in sacred trust as God's creation, to facilitate the extraction, transportation and use of fossil fuels that will accelerate global warming and cause great harm to the Earth."  See Complaint ¶ 111.

---

[5]     Transco is unconvinced that Plaintiffs will be successful in establishing such facts, but Transco acknowledges that challenging these elements at the present stage of this litigation is premature, particularly where it is clear that Plaintiffs' religious exercise has not been "substantially burdened" as a matter of law.

Plaintiffs' "coercion" theory fails a matter of law because Plaintiffs were not forced to use their land in a way that violated their beliefs, as they were not forced to construct or operate the Project.  See Adorers I, 897 F.3d at 189-90 (noting that Transco was authorized to construct the Project by FERC).  Indeed, Plaintiffs' theory of liability – that they suffered cognizable damages because their land was taken and used in a way that they objected to on religious grounds – has been rejected by other courts, including the Supreme Court, in analogous contexts.

Most recently, in Standing Rock, 239 F. Supp. 3d at 80, the court rejected a similar argument by a Native American tribe that an easement for an oil pipeline company across the tribe's property violated the tribe's religious belief in the sacredness of the tribe's land and gave rise to liability under RFRA.  See id. at 91 ("The government action here . . . does not impose a sanction on the Tribe's members for exercising their religious beliefs, nor does it pressure them to choose between religious exercise and the receipt of government benefits."); see also Navajo Nation, 535 F.3d at 1070 ("The use of recycled wastewater . . . does not coerce the [p]laintiffs to act contrary to their religion under the threat of civil or criminal sanctions . . . .").

Both Standing Rock and Navajo Nation relied heavily on the Supreme Court's decision in Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439 (1988).  See Standing Rock, 239 F. Supp. 3d at 91-93; Navajo Nation, 535 F.3d at 1071-73.  Although Lyng involved a First Amendment free exercise challenge rather than a RFRA challenge, the Supreme Court's analysis of what constitutes a "substantial burden" on religious exercise has been held to apply to the RFRA context.  See Standing Rock, 239 F. Supp. 3d at 93; Navajo Nation, 535 F.3d at 1072-73.

In Lyng, the plaintiffs challenged the U.S. Forest Service's decision to build a six-mile segment of paved road and permit timber harvesting in a government-owned area considered sacred by several tribes.  Lyng, 485 U.S. at 442-43.  Specifically, the plaintiffs contended that the

project "[would] diminish the sacredness of the area in question" and interfere with tribal members' religious practice.  Id. at 448.  The Supreme Court acknowledged that the Forest Service's decisions "would interfere significantly with private persons' ability to pursue spiritual fulfillment," but concluded that the government's actions did not cause cognizable harm under the Free Exercise Clause because they did not "coerce[ ]" the affected individuals "into violating their religious beliefs" or "penalize religious activity . . . ."  Id. at 449.  Instead, the Court explained, the harms at issue were "incidental effects of government programs, which . . . have no tendency to coerce individuals into acting contrary to their religious beliefs . . . ."  Id. at 450.

Lyng controls here, just as it controlled in Standing Rock and Navajo Nation.  Plaintiffs have not been coerced into violating their religious beliefs because they did not construct the Project and do not operate the Project.  Instead, Plaintiffs' alleged damages stem from the incidental effects of the Project.  Such incidental effects, however, do not constitute a "substantial burden" on Plaintiffs' religious exercise as a matter of law.  See Lyng, 485 U.S. at 450.  For this reason, Plaintiffs' claim fails on the merits and should be dismissed with prejudice.

### 3. The Construction of the Project on Plaintiffs' Property Was the Least Restrictive Means of Furthering a Compelling Government Interest.

Plaintiffs' claim also fails as a matter of law because the Project was constructed – and is being operated – in furtherance of a compelling governmental interest approved by FERC and was the least restrictive means of promoting that interest.

In enacting RFRA, Congress made clear that exercises of authority that are narrowly tailored to serve the public interest were excepted from the scope of RFRA.  Specifically, Congress provided that a state actor "may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person (1) is in the furtherance of a

compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(b).

As explained above, the predicate questions underlying the applicability of RFRA regarding the needs for, and burdens of, the Project have already been answered by FERC in connection with FERC's issuance of the FERC Order to Transco and have been affirmed by the D.C. Circuit. See Allegheny Def. Project, 964 F.3d at 19. More specifically, in issuing the FERC Order, FERC determined that the Project was in the public interest and that the route on which Transco constructed the Project – which included the Adorers' Property – was minimally intrusive. See Transcon. Gas Pipe Line Co., LLC v. Permanent Easements for 2.14 Acres, 907 F.3d 725, 730 (3d Cir. 2018) (explaining that FERC concluded that "[b]ased on the benefits" of the Project, and "the minimal adverse effects on landowners or surrounding communities, . . . the public convenience and necessity require[d] approval" of the Project), cert. denied, 139 S. Ct. 2639 (2019). This decision comported with decisions by courts around the country that have found a strong public interest in constructing and operating interstate pipelines. See, e.g., Steckman Ridge GP, LLC v. An Exclusive Nat. Gas Storage Easement, No. 08-168, 2008 WL 4346405, at *17 (W.D. Pa. Sept. 19, 2008).

To overcome RFRA's exception, Plaintiffs would need to relitigate what has already been decided regarding the Project being in the public interest and the Project's impacts. In attempting to do so, Plaintiffs would need to challenge FERC's approval of the Project and the Project route, which have since been affirmed by a federal appellate court. However, courts have repeatedly dismissed such belated collateral attacks on FERC-approved interstate pipeline projects. See, e.g., Transcon. Gas Pipe Line Co., LLC v. Permanent Easement for 2.59 Acres, 2017 WL 1105237, at *7; USG Pipeline, 1 F. Supp. 2d at 821. Because the construction and

operation of the Project was, and is, squarely in the public interest, Plaintiffs' RFRA claim fails as a matter of law.  Accordingly, the claim should be dismissed with prejudice.

### C.   Alternatively, Plaintiffs' Request for Punitive Damages Should Be Stricken, or Otherwise Dismissed.

In the event that this Court declines to dismiss this action in its entirety for lack of subject-matter jurisdiction or on the merits for failure to state a claim, Plaintiffs' request for punitive damages should be stricken, or otherwise dismissed.

Punitive damages are awarded "to punish [defendants] for [their] outrageous conduct and to deter [them] and others like [them] from similar conduct in the future."  Smith v. Wade, 461 U.S. 30, 54 (1983) (citation omitted).  Thus, punitive damages may only be awarded "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Id. at 56.

Here, Plaintiffs have made no allegations sufficient to support the imposition of punitive damages.  At best, Plaintiffs claim that the decision to route the Project through their Property caused them distress.  Plaintiffs have not alleged that Transco acted in an outrageous or callous fashion.  Nor could they, as Plaintiffs concede that Transco diligently followed the NGA's process (in which Plaintiffs failed to participate).  See Complaint ¶¶ 67-70, 77-78, 103, 109. This Court should thus strike, or otherwise dismiss, Plaintiffs' request for punitive damages.

## IV.   CONCLUSION.

For all of the foregoing reasons, Transco respectfully requests that this Court dismiss Plaintiffs' Complaint with prejudice, or, in the alternative, strike Plaintiffs' request for punitive damages, and enter any such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:  December 9, 2020

**SAUL EWING ARNSTEIN & LEHR LLP**

s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esq. (PA55808)
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087-5569
(610) 251-5062
*Elizabeth.Witmer@saul.com*

Sean T. O'Neill, Esq. (PA205595)
Albert F. Moran, Esq. (PA318683)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7159
*Sean.Oneill@saul.com*
*Albert.Moran@saul.com*

*Attorneys for Defendant Transcontinental Gas
Pipe Line Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused a true and correct copy of the foregoing *Defendant Transcontinental Gas Pipe Line Company, LLC's Motion to Dismiss Plaintiffs' Complaint* and accompanying proposed Order, Memorandum of Law, and Exhibit A to be served on the following counsel via the Court's electronic filing system:

J. Dwight Yoder, Esq.
Sheila V. O'Rourke, Esq.
Gibbel Kraybill & Hess LLP
2933 Lititz Pike, P.O. Box 5349
Lancaster, PA 17606

*Attorneys for Plaintiffs*

 s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esquire

Dated: December 9, 2020