**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| ADORERS OF THE BLOOD OF CHRIST, UNITED STATES PROVINCE, N/K/A ADORERS OF THE BLOOD OF CHRIST, UNITED STATES REGION, SUCCESSOR BY MERGER TO ADORERS OF THE BLOOD OF CHRIST, PROVINCE OF COLUMBIA, PA, INC., F/K/A SAINT JOSEPH CONVENT MOTHERHOUSE OF THE ADORERS OF THE BLOOD OF CHRIST, COLUMBIA, PENNSYLVANIA, INC., ALSO F/K/A SAINT JOSEPH'S CONVENT, MOTHER HOUSE OF SISTER ADORERS OF THE MOST PRECIOUS BLOOD, COLUMBIA, PA, A/K/A SISTERS ADORERS OF THE MOST PRECIOUS BLOOD, ST. JOSEPH CONVENT, COLUMBIA, PA, et al., | : : : : : : : : : : : : : : : : : : : | CIVIL ACTION – LAW<br><br>Docket No. <u>5:20-cv-05627-JLS</u> |
| Plaintiffs, | : | |
| v. | : : : | |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : : : | |
| Defendant. | : : : | |

**REPLY BRIEF IN FURTHER SUPPORT OF
DEFENDANT TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION. ..................................................................................................1

II.     ARGUMENT...........................................................................................................2

     A.    This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' RFRA Claim. ........2

          1.    Plaintiffs' Attempt to Distinguish <u>Adorers I</u> Fails.....................................2

          2.    Plaintiffs' Request for Damages Under RFRA Does Not Impact the Jurisdictional Analysis...............................................................................4

     B.    Plaintiffs Cannot Overcome Their Failure to State a Cognizable RFRA Claim. ....6

          1.    Because Plaintiffs Were Not Forced to Do Anything, Their Religious Exercise Has Not Been "Substantially Burdened" as a Matter of Law. ............................................................................................6

          2.    Transco's Argument that the Construction and Operation of the Project Is a Compelling Government Interest Instituted by the Least Restrictive Means Is Appropriately Considered at this Juncture.................9

     C.    Plaintiffs' Conclusory Prayer for Punitive Damages Is Legally Insufficient and Should Be Stricken, or Otherwise Dismissed........................................................10

III.    CONCLUSION.....................................................................................................10

# <u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

Adorers of the Blood of Christ v. FERC,
897 F.3d 187 (3d Cir. 2018)...............................................................3, 4, 9

Boring v. Google Inc.,
362 F. App'x 273 (3d Cir. 2010) ...............................................................10

Burwell v. Hobby Lobby Stores, Inc.,
573 U.S. 682 (2014)...............................................................................1, 7

City of Orrville, Ohio v. FERC,
147 F.3d 979 (D.C. Cir. 1998)....................................................................4

Columbia Gas Transmission Corp. v. FERC,
448 F.3d 382 (D.C. Cir. 2006)....................................................................6

Del. Riverkeeper Network v. FERC,
857 F.3d 388 (D.C. Cir. 2017).....................................................................3

Freeman v. Early Warning Servs., LLC,
443 F. Supp. 3d 581 (E.D. Pa. 2020) ..........................................................2

Lyng v. Nw. Indian Cemetery Protective Ass'n,
485 U.S. 439 (1988)..............................................................................7, 8

Navajo Nation v. U.S. Forest Serv.,
535 F.3d 1058 (9th Cir. 2008) ....................................................................7

Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs.,
867 F.3d 338 (3d Cir. 2017).....................................................................7, 8

Savarese v. Agriss,
883 F.2d 1194 (3d Cir. 1989).....................................................................10

Shrieves v. Phila. Facilities Mgmt. Corp.,
No. 19-4865, 2020 WL 7240450 (E.D. Pa. Dec. 8, 2020).............................2

Siegel v. Goldstein,
No. 19-2890, 2020 WL 7240451 (E.D. Pa. Dec. 9, 2020)...........................10

Slockish v. U.S. Fed. Highway Admin.,
No. 3:08-cv-01169, 2018 WL 4523135 (D. Or. Mar. 2, 2018) ....................7

Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers,
239 F. Supp. 3d 77 (D.D.C. 2017)...............................................................7

*Tanzin v. Tanvir,*
    No. 19-71, ___ S. Ct. ___, 2020 WL 7250100 (U.S. Dec. 10, 2020) ................................... 5, 6

*Thomas v. Review Bd. of Ind. Emp't Sec. Div.,*
    450 U.S. 707 (1981) ........................................................................................................ 9

**FEDERAL STATUTES**

15 U.S.C. § 717r(b) ................................................................................................................ 3

Federal Rule of Civil Procedure 12(b)(6) ............................................................................. 1

**FEDERAL REGULATIONS**

18 C.F.R. § 385.1902 ............................................................................................................. 3

Defendant Transcontinental Gas Pipe Line Company, LLC ("Transco") submits this Reply Brief in further support of its Motion to Dismiss Plaintiffs' Complaint (the "Motion to Dismiss").[1]

## I.      **INTRODUCTION.**

Plaintiffs' Response in Opposition to Transco's Motion to Dismiss ("Response") conspicuously ignores their failure to participate in an NGA-required process that lasted years. Plaintiffs' failure forecloses this Court's ability to hear their RFRA claim – which inheres in the FERC Order that authorized the Project – at this late juncture.

To distract this Court from their repeated failures, Plaintiffs try to distinguish this action from Adorers I by claiming that they now challenge the construction and operation of the Project, as opposed to FERC's approval of the Project.  This argument fails because Plaintiffs could have challenged FERC's administrative orders allowing construction and operation of the Project, in accordance with the NGA's reticulated process, and precedent squarely holds that they were required to do so.  Yet once again, Plaintiffs ignored the NGA's requirements, such that they once again created their own incurable jurisdictional predicament.

Plaintiffs also claim that a recent Supreme Court decision in an **entirely different context** providing for the availability of damages under RFRA in **other circumstances** provides Plaintiffs with their needed jurisdictional hook.  But this decision simply confirms that RFRA's guarantee of "appropriate relief" is context-dependent.

Plaintiffs' attempt to defeat Transco's Rule 12(b)(6) challenges to the Complaint also fails. Their reliance on Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014), ignores the dispositive fact that they have not been forced to do anything, and their untenably vague claim that

---

[1]      The same definitions used throughout Transco's Motion to Dismiss are used herein.

they are indirectly complicit in a purportedly "immoral act" does not constitute a "substantial burden" under RFRA based on case law from the U.S. Court of Appeals for the Third Circuit.

Finally, Plaintiffs' attempt to salvage their claim for punitive damages is unavailing. Plaintiffs' claim for such damages rests entirely on conclusions of law which this Court need not consider, and their generalized allegation of "recklessness" on the part of Transco simply cannot be divorced from their failure to participate in the NGA's process.

## II.     ARGUMENT.

### A.     This Court Lacks Subject Matter Jurisdiction Over Plaintiffs' RFRA Claim.

#### 1.     Plaintiffs' Attempt to Distinguish Adorers I Fails.

The Third Circuit's jurisdictional analysis in Adorers I controls here and compels dismissal of Plaintiffs' Complaint.[2]  See Mem. of Law in Support of Transco's Motion to Dismiss at 11-17. Plaintiffs claim that Adorers I does not apply because "[o]n the other hand, the instant complaint seeks damages based on Transco placing its Pipeline in to operation in October 2018."  Response at 16.  But, as Plaintiffs admit, "Transco needed a notice to proceed from FERC before it could commence any pipeline activities on the Property" (id.)., and Transco also needed approval from FERC to place the pipeline into operation.[3]  As in Adorers I, Plaintiffs failed to avail themselves

---

[2]     It bears note that Plaintiffs misstate the applicable standard of review.  See Response at 10. Transco has asserted a factual attack on jurisdiction, such that this Court's consideration of the documents referenced in Transco's Motion to Dismiss is proper.  See Transco's Mem. of Law in Support of Motion to Dismiss at 16 ("The allegations in this new Complaint are simply a repeat of Adorers I, and are a collateral attack on the decisions made by FERC in issuing the FERC Order."); Shrieves v. Phila. Facilities Mgmt. Corp., No. 19-4865, 2020 WL 7240450, at *9 (E.D. Pa. Dec. 8, 2020) ("A factual attack disputes the factual basis supporting subject matter jurisdiction."). Regardless, even if this Court deems Transco's jurisdictional challenge to be facial, this Court may consider the documents cited in Transco's Motion to Dismiss because these documents are public records.  See Freeman v. Early Warning Servs., LLC, 443 F. Supp. 3d 581, 583 (E.D. Pa. 2020).

[3]     See Accession No. 20181004-3012, Letter order granting Transco's request to place facilities into service (Oct. 4, 2018), available at https://www.ferc.gov/docs-filing/elibrary.asp;

of any of the process available at FERC, and failed to seek rehearing of the notice to proceed with

construction, or of the notice allowing the pipeline to commence operation.

As outlined in <u>Adorers I</u>, challenges to FERC-issued orders must follow the NGA's

administrative process by which a request for rehearing must be filed, and then an appeal must be

filed with an appropriate federal court of appeals, as these courts have exclusive jurisdiction to

consider such challenges. "[T]he NGA merely provides for complementary procedural

requirements that a claimant must adhere to when exercising their RFRA right to a 'judicial

proceeding.'" <u>Adorers of the Blood of Christ v. FERC</u>, 897 F.3d 187, 193 (3d Cir. 2018), <u>cert.</u>

<u>denied</u>, 139 S. Ct. 1169 (2019).  Those NGA procedures also apply to supplemental orders like

Notices to Proceed with construction.  <u>See, e.g.</u>, <u>Del. Riverkeeper Network v. FERC</u>, 857 F.3d

388, 393 (D.C. Cir. 2017) ("This court has jurisdiction to review challenges to certificates granted

under the NGA, but petitioning parties must first seek rehearing before [FERC] and may not raise

any argument before this court that was not raised on rehearing.  <u>See</u> 15 U.S.C. § 717r(b).  **Letter**

**orders issued by FERC are also subject to review in this court subject to the same rehearing**

**requirement**.  <u>See</u> 18 C.F.R. § 385.1902.") (emphasis added); <u>see also</u> <u>id.</u> at 397 ("Because

[petitioner] failed to seek rehearing of any of the disputed letter orders authorizing pre-construction

activities, those individual decisions are not properly before this court.").

Here, just as Plaintiffs failed to seek rehearing of the FERC Order, Plaintiffs ignore that

they could have sought rehearing of the Notice to Proceed with construction of the Project (or the

Notice to Proceed to place the Project into service).  So, as the Third Circuit concluded in <u>Adorers</u>

<u>I</u>, ". . . because they failed to engage with the NGA's procedural regime, we are without jurisdiction

---

Accession No. 20181009-5045, Notification of Placement into Service (Oct. 9, 2018), <u>available at</u>
https://www.ferc.gov/docsfiling/elibrary.asp.

to hear the Adorers' claims." 897 F.3d at 198.  Plaintiffs sent a letter dated August 31, 2018 to

FERC advising FERC for the first time outside the context of litigation of their religious objection

to the Project.  See Compl. at Ex. L.  But Plaintiffs again failed to follow the NGA's process and

failed to even try to intervene or seek rehearing of the FERC's authorizations, which they now

complain violate RFRA.  Clearly, by August 2018 when Plaintiffs sent the letter, they knew about

the ramifications of failing to follow the NGA process, given that this Court had dismissed the

original RFRA action in September 2017 and the Third Circuit's Adorers I decision had issued.

Plaintiffs' arguments regarding the "conditional" FERC Order are thus nonsensical.  Plaintiffs had

many opportunities to challenge the later orders by FERC that authorized construction and the

placement of the Project into service, but they failed to do so in every instance,[4] and in performing

these activities, Transco was merely fulfilling the conditions of the FERC Order.

Because Plaintiffs failed (again) to avail themselves of the NGA's process, they fail (again)

to state any kind of claim for relief under RFRA and this Court is "without jurisdiction," as in

Adorers I.  See 897 F.3d at 198.

### 2.    Plaintiffs' Request for Damages Under RFRA Does Not Impact the Jurisdictional Analysis.

Plaintiffs' baseless attempt to manufacture jurisdiction is underscored by their Response,

which in no way rebuts Transco's argument that the jurisdictional analysis is not controlled by the

remedy sought.  See Mem. of Law in Support of Transco's Motion to Dismiss at 17-19.  To this

end, Plaintiffs' claim that they could not have received "meaningful review" of their RFRA claim

---

[4]    By the time Plaintiffs filed their August 31, 2018 letter with FERC, the deadline to intervene in the FERC administrative proceedings had expired.  While it was nevertheless still possible for Plaintiffs to intervene in those proceedings and seek rehearing and an appeal to a federal court of appeals, they never tried to do so.  See FERC Order ¶ 13 (noting that "[l]ate interventions" were granted); City of Orrville, Ohio v. FERC, 147 F.3d 979, 988 (D.C. Cir. 1998) (setting forth standard for consideration of late intervention requests).  Because Plaintiffs never raised their RFRA claim with FERC, they are foreclosed from raising it in this Court now.

through the NGA's process incorrectly assumes that this is a factor the Court should consider.  As explained in Transco's Motion to Dismiss, this Court should not, because the NGA expressly precludes jurisdiction over Plaintiffs' claim.  But even if this Court applies a <u>Thunder Basin</u> analysis, Plaintiffs could have received "meaningful review" through the FERC process because they could have prevailed in their challenge to the Project.  But they failed to seek rehearing, such that they waived their right to judicial review.  <u>See id.</u> at 19.

While Plaintiffs rely on the Supreme Court's decision in <u>Tanzin v. Tanvir</u>, No. 19-71, ___ S. Ct. ___, 2020 WL 7250100 (U.S. Dec. 10, 2020), Plaintiffs misstate <u>Tanzin's</u> holding, which is simply that RFRA's remedies provision "permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities."  2020 WL 7250100, at *5.  By arguing that <u>Tanzin</u> supports their claim to damages, Plaintiffs beg the question and ignore that the key issue is whether in this context monetary damages alone constitute the "appropriate relief" guaranteed by RFRA.  <u>See id.</u> at *4 (explaining that because RFRA's guarantee of "appropriate relief" is "'open-ended' on its face, what relief is 'appropriate' is 'inherently context dependent'") (quoting <u>Sossamon v. Texas</u>, 563 U.S. 277, 286 (2011)).  The Supreme Court's holding in <u>Tanzin</u> simply reinforces Transco's argument: while money damages may be available under RFRA in certain contexts, they are not guaranteed here, where Plaintiffs failed to follow the NGA's highly reticulated process, which could have led to a reroute of the Project around the Adorers' Property.

Plaintiffs' Response also confirms that the ultimate relief they seem to want is not damages, but instead to have the pipeline removed from the Adorers' Property.  <u>See</u> Response at 9 ("Natural gas presently is flowing through the Adorers' Property in direct violation of the Adorers' religious practice and sincerely-held beliefs."); <u>see also id.</u> at 23.  However, due to Plaintiffs' own inaction, they cannot pursue that relief.  As the Supreme Court explained in <u>Tanzin</u>, relief is "appropriate"

when it can remedy a RFRA violation.  See 2020 WL 7250100, at *5 ("For certain injuries . . .

effective relief consists of damages, not an injunction.").  The "appropriate relief" for a RFRA

violation in this context was available through the NGA's process.

Finally, Plaintiffs' suggestion that the NGA categorically circumscribes FERC's authority

to award damages is incorrect.  FERC has awarded damage in other contexts, and there is nothing

in the NGA that prohibits FERC from awarding damages for an alleged RFRA violation.  Cf.

Columbia Gas Transmission Corp. v. FERC, 448 F.3d 382, 387 (D.C. Cir. 2006) (stating that "at

least some of [petitioner's] damage demands appear to fall within FERC's understanding of its

remedial authority" and citing case where FERC required pipeline companies to pay damages).

Further, courts have explained that FERC's ability to determine whether it has the authority to

award damages is FERC's decision to make.  See id.  Here, FERC never had an opportunity to

make that determination due to Plaintiffs' failure to participate in the NGA's process.

Finally, Plaintiffs fail to mention that they will receive just compensation for Transco's

taking in connection with the related condemnation action.  Indeed, the parties have stipulated to

the recoverable damages in that action.  Additionally, although Plaintiffs assert that they "filed a

claim for compensation . . . for Transco's violation of RFRA" in the condemnation action (see

Response at 8), no formal "claim" was ever filed, as Plaintiffs never filed Complaint, counter-

claim, or other cause of action for RFRA damages in the condemnation action.  See No. 17-1725,

Dkt. Nos. 42, 47-48 (E.D. Pa.).

### B.    Plaintiffs Cannot Overcome Their Failure to State a Cognizable RFRA Claim.

#### 1.    Because Plaintiffs Were Not Forced to Do Anything, Their Religious Exercise Has Not Been "Substantially Burdened" as a Matter of Law.

A "substantial burden" of religious exercise under RFRA can only arise when individuals

are (1) forced to choose between following the tenets of their religion and receiving a government

benefit; or (2) coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions.  See Transco's Mem. of Law in Support of Motion Dismiss at 21 (citing cases).  Ignoring this well-established body of case law, Plaintiffs vaguely claim that "a substantial burden derives from being compelled to facilitate the immoral act of another."  See Response at 18.  Plaintiffs' argument in this respect fundamentally distorts the Supreme Court's decision in Hobby Lobby.

Hobby Lobby involved a factual scenario in which the plaintiffs were forced to perform an affirmative act – namely, providing health insurance coverage for abortion-inducing drugs and devices, as well as related education and counseling.  See Hobby Lobby, 573 U.S. at 696-98 (explaining "contraceptive mandate"); see also Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers, 239 F. Supp. 3d 77, 96 (D.D.C. 2017) (explaining that Hobby Lobby's "ultimate conclusion that the mandate imposed a substantial burden rested on the fact that the owners had to choose between violating their beliefs and paying financial penalties").  As other courts have recognized, Hobby Lobby did not expand the coercion/compulsion standard articulated in Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439 (1988), that has been reinforced through Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058 (9th Cir. 2008), and other cases.  See Slockish v. U.S. Fed. Highway Admin., No. 3:08-cv-01169, 2018 WL 4523135, at *2-7 (D. Or. Mar. 2, 2018) (rejecting argument that government's "damaging and destroying a historic campground and burial grounds" and "blocking off access" to these areas constituted a substantial burden under RFRA and explaining that "there is nothing in the Hobby Lobby opinion that eviscerated the RFRA's requirement of government coercion or compulsion"), report and recommendation adopted, No. 3:08-cv-01169, 2018 WL 2875896 (D. Or. June 11, 2018).

The U.S. Court of Appeals for the Third Circuit's analysis in Real Alternatives, Inc. v. Sec'y Dep't of Health & Human Servs., 867 F.3d 338 (3d Cir. 2017), should guide this Court's

analysis here.  In <u>Real Alternatives</u>, the Third Circuit considered a claim that the Patient Protection

and Affordable Care Act, which required organizations to provide contraceptive coverage for their

employees, and that employees maintain such coverage, violated RFRA.  867 F.3d at 342.  Much

like Transco does here, the defendants in <u>Real Alternatives</u> claimed that the alleged burden at issue

– maintaining an insurance plan that included coverage for preventative services – was not

substantial based on the Supreme Court's decision in <u>Lyng</u> and subsequent RFRA cases that have

interpreted <u>Lyng</u>.  <u>Id.</u> at 347, 357-58.  The plaintiffs raised an argument that their "sincerely held

religious beliefs prohibit them from using, supporting, or otherwise advocating the use of

abortifacients, or participating in a health insurance plan that covers such items for themselves or

their families."  <u>Id.</u> at 346.  The Third Circuit squarely rejected this argument, holding:

> There is no substantial burden if the governmental action does not
> coerce the individuals to violate their religious beliefs or deny them
> the "rights, benefits, and privileges enjoyed by other citizens"—
> even if "the challenged Government action would interfere
> significantly with private persons' ability to pursue spiritual
> fulfillment according to their own religious beliefs." . . . Cases
> finding a substantial burden under RFRA have consistently done so
> where . . . there is a burden that interfered with the claimants'
> exercise and religion is directly implicated . . . . The connection
> between the conduct and the religious belief matters, for the law
> distinguishes between direct participation and remote facilitation,
> treating the former as compelling and the latter as negligible.

<u>Id.</u> at 357-61 (quoting <u>Lyng</u>, 485 U.S. at 449) (other citation and internal quotations omitted).

Here, as in <u>Real Alternatives</u>, Plaintiffs' "substantial burden" claim is too attenuated – if the

purported "facilitation" of an "immoral act" of another was sufficient under RFRA, the bright line

distinction articulated in <u>Real Alternatives</u> would be eviscerated.  Plaintiffs have not shown, and

cannot show, how Transco's construction and operation of the Project on the Adorers' Property

compels any action from them, as they have not been forced to do anything.[5]  As such, their RFRA

claim must be dismissed.

> **2.**    **Transco's Argument that the Construction and Operation of the Project Is a Compelling Government Interest Instituted by the Least Restrictive Means Is Appropriately Considered at this Juncture.**

Plaintiffs suggest that the issuance of the FERC Order – and, by implication, the lengthy

and deliberative administrative process that preceded it, in which Plaintiffs failed to participate –

is irrelevant to the question of whether Transco's Project was constructed pursuant to a compelling

government interest and was implemented through the least restrictive means.  See Response at

22-23.  However, Plaintiffs' argument in this respect ignores the clear text of the FERC Order,

which answers both of these questions in the affirmative.  See FERC Order ¶ 28 (explaining that

Transco's Project "would serve the public interest"); id. ¶ 33 ("[T]he public convenience and

necessity requires approval of Transco's [Project]."); see also id. ¶¶ 14, 149-158 (addressing

alterative routes); see also Adorers I, 897 F.3d at 193 ("FERC may grant a certificate only upon a

finding that the project at issue will serve the public interest of convenience and necessity.").[6]

This Court may properly make these determinations at this juncture.  All of the relevant

facts are not only public record, but have been litigated up to the Supreme Court in connection

with Adorers I.  Plaintiffs' claim that Transco's argument is in the nature of an affirmative defense

and may not be raised in a motion to dismiss thus should not be countenanced by this Court.

---

[5]    Another Supreme Court case cited by Plaintiffs to support their claim that they are being "forced" to act against their religious beliefs, Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707 (1981), is easily distinguishable.  Thomas involved a situation where a religious objector was being **affirmatively forced** by the government to manufacture armaments.

[6]    Notably, Plaintiffs misstate the relevant standard for RFRA's exception.  The question is not whether the Project served "an essential government function."  See Response at 23.  Rather, the question is whether the Project served a "compelling governmental interest."  As explained in Transco's Motion to Dismiss, both the FERC Order and well-established case law demonstrate that the Project was in furtherance of such an interest.

C.    <u>**Plaintiffs' Conclusory Prayer for Punitive Damages Is Legally Insufficient and Should Be Stricken, or Otherwise Dismissed**</u>.

Ignoring their inaction during the entire FERC administrative process, Plaintiffs claim that they have sufficiently alleged a claim for punitive damages simply because they alleged that Transco acted "reckless[ly]" in constructing the Project as it was authorized by the FERC Order. *See* Response at 23-24.  However, Plaintiffs' conclusory legal allegations cannot overcome the facts of public record, which demonstrate that Transco acted in accordance with the FERC-authorized Project route and the NGA's process, and Plaintiffs' admission that Transco needed, and obtained, approvals from FERC to construct and operate the pipeline.  <u>See</u> <u>Siegel v. Goldstein</u>, No. 19-2890, 2020 WL 7240451, at \*4 (E.D. Pa. Dec. 9, 2020) ("[O]n a motion to dismiss . . . , the court need not accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation . . ."); <u>see also</u> <u>Boring v. Google Inc.</u>, 362 F. App'x 273, 283 (3d Cir. 2010) (affirming decision to dismiss claim for punitive damages where complaint "fail[ed] to allege conduct that is outrageous or malicious" and "there [were] no facts suggesting that [defendant] acted maliciously or recklessly . . .").

Even if Plaintiffs' allegations in their Complaint as to Transco's purported knowledge as to Plaintiffs' religious objections are to be believed, the fact that Transco's Project was lawfully authorized and constructed under a highly reticulated statutory regime precludes the imposition of punitive damages in this action.  <u>See</u> <u>Savarese v. Agriss</u>, 883 F.2d 1194, 1205 (3d Cir. 1989) ("[P]unitive damages . . . represent a limited remedy, to be reserved for special circumstances").

III.   <u>**CONCLUSION**</u>.

For the foregoing reasons, in addition to those set forth in Transco's Motion to Dismiss, Transco respectfully requests that this Court dismiss this action with prejudice.

Respectfully submitted,

Dated: December 30, 2020                **SAUL EWING ARNSTEIN & LEHR LLP**

s/ Elizabeth U. Witmer
Elizabeth U. Witmer, Esq. (PA55808)
1200 Liberty Ridge Drive, Suite 200
Wayne, PA 19087-5569
(610) 251-5062
*Elizabeth.Witmer@saul.com*

Sean T. O'Neill, Esq. (PA205595)
Albert F. Moran, Esq. (PA318683)
Centre Square West
1500 Market Street, 38th Floor
Philadelphia, PA 19102-2186
(215) 972-7159
*Sean.Oneill@saul.com*
*Albert.Moran@saul.com*

*Attorneys for Defendant Transcontinental Gas*
*Pipe Line Company, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day I caused a true and correct copy of the foregoing *Reply Brief in Further Support of Defendant Transcontinental Gas Pipe Line Company, LLC's Motion to Dismiss Plaintiffs' Complaint* to be served on the following counsel via the Court's electronic filing system:

J. Dwight Yoder, Esq.
Sheila V. O'Rourke, Esq.
Gibbel Kraybill & Hess LLP
2933 Lititz Pike, P.O. Box 5349
Lancaster, PA 17606

*Attorneys for Plaintiffs*

         s/ Elizabeth U. Witmer
         Elizabeth U. Witmer, Esquire

Dated: December 30, 2020