**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ADORERS OF THE BLOOD OF CHRIST, UNITED STATES PROVINCE, *et al,* | : : : | |
| Plaintiffs, | : : | CIVIL ACTION |
| v. | : : | No. 20-5627 |
| TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC, | : : : : | |
| Defendant. | : | |

**<u>MEMORANDUM OPINION</u>**

**Schmehl, J.  /s/ JLS**                                    **September 30, 2021**

## I.      <u>INTRODUCTION</u>

Before the Court is the motion to dismiss of Defendant, Transcontinental Gas Pipe Line Company, LLC ("Transco"). Plaintiffs, a Roman Catholic religious order called the Adorers of the Blood of Christ ("the Adorers"), and several individual sisters (collectively, "Plaintiffs") filed a Complaint against Transco for alleged violations of the Religious Freedom Restoration Act ("RFRA") and seek monetary damages. Based upon the parties' submissions and after oral argument being held in this matter, Defendant's motion is granted, and this matter will be dismissed.

## II.      <u>BACKGROUND</u>

### A.  The Pipeline

Transco is involved in a project to construct and operate a natural gas pipeline known as the Atlantic Sunrise Pipeline ("the pipeline") running through five states, including a portion of Lancaster County, Pennsylvania. The pipeline route crosses a piece of property owned by the

Adorers and has been in operation for nearly three years. The Complaint alleges that the Adorers of the Blood of Christ is a "vowed religious order of Roman Catholic women whose religious practice includes protecting and preserving creation, which they believe is a revelation of God, the sacredness of which must be honored and protected for future generations. The individually named plaintiffs are all Sisters of the Adorers." [ECF No. 1, ¶ 1.] Plaintiffs claim the construction and operation of the Pipeline through land they own in Columbia, Pennsylvania would violate their free exercise of religion protected by RFRA.

### B. Procedural History

On March 31, 2015, Transco filed an application with FERC under section 7(c) of the Natural Gas Act ("NGA"), 15 U.S.C. 717f(c), for authorization to construct and operate the Pipeline.  On February 3, 2017, FERC issued a "Certificate of Public Convenience and Necessity" ("FERC Order") authorizing Transco's proposed route for the Pipeline that would require use of the Adorers' property. The FERC Order granted Transco the right to take private property along the route of the Pipeline by eminent domain if landowners such as the Adorers would not agree to voluntarily convey their land. Many interested parties, including affected landowners, requested a rehearing of the FERC Order. Significantly, the Adorers did not present their RFRA claims (or raise any other objections) to FERC either initially or by requesting a rehearing.

The Adorers refused to voluntarily convey their land. As a result, on April 14, 2017, Transco filed a "Verified Complaint in Condemnation of Property Pursuant to Fed. R. Civ. P. 71.1" in this Court to condemn a portion of the Adorers' property to allow Transco to construct, install and operate the Pipeline on the Adorers' property. The Adorers neither responded to the Verified Complaint nor to Transco's motion for partial summary judgment on the issue of

Transco's right to condemn. After an evidentiary hearing on July 7, 2017, this Court granted Transco's motion for Partial Summary Judgment. On August 23, 2017, this Court granted possession of the Adorers' property to Transco.

There has been extensive litigation between Transco and the Adorers, both in the condemnation action related to the Adorers property and in a previous action brought by the Adorers seeking injunctive relief for alleged violations of the RFRA. This Court previously dismissed the Adorers RFRA claim, finding that we lack jurisdiction to hear the Adorers' claims because they should have been brought in front of FERC. The Third Circuit affirmed this Court in a precedential decision in which it concluded that the NGA contained a "highly reticulated" review process that required the Adorers to exhaust their remedies before FERC and then seek review in a federal court of appeals, which would have "exclusive" jurisdiction to "affirm, modify, or set aside" the FERC certificate of public necessity. *Adorers of the Blood of Christ v. FERC*, 897 F.3d 187, 194-95 (3d Cir. 2018) (quoting 15 U.S.C. § 717r(b)) (hereinafter "*Adorers I*"). The Adorers sought review of the Third Circuit's decision, and the Supreme Court declined to grant them a writ of certiorari. 139 S. Ct. 1169.

The Adorers then filed the instant action, in which they again claim violations of the RFRA, alleging that FERC's decision to approve the Project route through their property violated their religious beliefs because it "forc[ed] them to use their own land, which they hold in sacred trust as God's creation, to facilitate the extraction, transportation and use of fossil fuels…" Complaint at ¶ 111. The instant action is nearly identical to the previous action filed by the Adorers for alleged RFRA violations and dismissed by this Court except that the Adorers now seek monetary damages as opposed

to injunctive relief.[1] However, as will be discussed more fully below, the Adorers cannot manufacture jurisdiction in this Court simply by seeking an alternative remedy. Accordingly, Transco's motion will be granted, and this matter will be dismissed.

## III.   LEGAL STANDARD

Transco brings its motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Rule 12(b)(1) challenges are either facial or factual attacks. *Kestelboym v.Chertoff*, 538 F. Supp. 2d 813, 815 (D.N.J. 2008). "A facial attack questions the sufficiency of the pleading," and "[i]n reviewing a facial attack, a trial court accepts the allegations in the complaint as true." *Id.* However, "when a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id. See also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.*, 227 F.3d 62, 69 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In evaluating a Rule 12(b)(1) motion, "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891; *see also Carpet Group Int'l*, 227 F.3d at 69. "[T]he existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891. The plaintiff has the burden of proving that jurisdiction does in fact exist. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) (*quoting Mortensen*, 549 F.2d at 891).

---

[1] I note that the Adorers also sought monetary damages for RFRA violations in the compensation proceeding of the action in which their property was condemned. I dismissed this claim and held that RFRA damages are not recoverable under the Pennsylvania Eminent Domain Code.

4

IV.    **DISCUSSION**

The RFRA provides:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except … [g]overnment may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person---(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000bb-1(a), (b). The RFRA then states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* at § 2000bb-1(c).

In its motion to dismiss for lack of subject matter jurisdiction, Transco again argues that under the NGA, this Court lacks subject matter jurisdiction over the Adorers' RFRA claims. Again, this Court agrees.

As we found in *Adorers I*, and as was confirmed by the Third Circuit, § 717r's exclusivity provision forecloses judicial review of a FERC certificate in district court. *Adorers I*, 897 F.3d at 195; *see also Town of Dedham v. Federal Energy Regulatory Commission*, 2015 WL 4274884, at *1 (D. Mass. July 15, 2015). Further, the Third Circuit found that the text of the RFRA does not "specifically confer jurisdiction to the federal district courts to hear RFRA claims," or otherwise "abrogate or provide an exception to [the] specific and exclusive jurisdictional provision prescribed by Congress" in the NGA for judicial review of FERC orders. *Adorers I*, 897 F.3d at 194, 198. The NGA's "procedural requirements, which permit parties to seek review in a court of appeals following an initial agency hearing, qualify as a 'judicial proceeding' under RFRA." *Id.* at 194, n. 6.

As in *Adorers I*, the Adorers do not dispute that they not only failed to apply for a rehearing before FERC but failed to present their RFRA claims in any manner to the FERC, and

ultimately to the appropriate Court of Appeals, which would be the D.C. Circuit. Clearly, Plaintiffs "would have had an opportunity to present their RFRA claims in a judicial proceeding before the appropriate Court of Appeals had they first sought a rehearing before FERC. . ." *Am. Energy Corp. v. Rockies Express Pipeline LLC*, 622 F.3d 602, 605 (6th Cir. 2010). As stated by the Third Circuit, "the NGA is the exclusive remedy for matters relating to the construction of interstate natural gas pipelines. . .  By failing to avail themselves of the protections thereunder, the Adorers have foreclosed judicial review of their substantive RFRA claims." *Adorers I*, 897 F. 3d at 195. This holding from our Court of Appeals would seem to foreclose any RFRA claim on the part of the Adorers. However, Plaintiffs here argue that because they are seeking monetary damages in the instant action (as opposed to the injunctive relief they sought in *Adorers I*) and that money damages are not available through FERC's administrative process, this Court has subject matter jurisdiction over this case.

I find that simply seeking money damages as opposed to injunctive relief does not cure the jurisdictional defect in this matter. First, as set forth in *Adorers I*, "FERC may hear any claim raised before it – even potential violations of federal law." 897 F.3d at 197. (footnote omitted) There is nothing to prevent FERC from hearing a claim for money damages under the RFRA if said claim was properly raised by an affected party. In fact, FERC has required a pipeline company to pay money damages in the past. *See Sunoco, Inc. v. Transco*, 111 FERC P 61400. 2005 WL 1414290, * 7 (June 16, 2005) (requiring an offending pipeline to pay consequential damages for its breach of a service agreement). However, in the instant matter, FERC never had an opportunity to make the determination of whether or not to award RFRA damages because Plaintiffs completely failed to participate in the NGA's process.

Second, the RFRA does not guarantee an award of monetary damages if a violation is found. To the contrary, the RFRA entitles a person whose religious liberty has been burdened to "appropriate relief." The RFRA's guarantee of "appropriate relief" is "open-ended" on its face, and what relief is 'appropriate' is 'inherently context dependent.'" *Tanvir v. Tanzin*, 141 S. Ct. 486, 491 (2020) (*quoting Sossamon v. Texas*, 563 U.S. 277, 286 (2011)). If Plaintiffs had properly challenged the FERC order and been successful, it could have led to a reroute of the pipeline around Plaintiffs' property. Surely that would have been the more "appropriate relief" for Plaintiffs' religious objections to the project than the receipt of money damages. Here, the allegations made in the Complaint are again a collateral attack on the decisions made by FERC in issuing the FERC order and Plaintiffs' challenge remains subject to the exclusive jurisdiction scheme set forth in the NGA, no matter what type of relief they are seeking.[2]

Here, allowing a suit for monetary damages under RFRA based on the claim that the route of the pipeline - which Plaintiffs did not challenge despite multiple opportunities to do so - should entitle Plaintiffs to money damages in addition to the just compensation they received in the condemnation action is inconsistent with the process Congress enacted in passing the NGA. Accordingly, Plaintiffs' RFRA claim is a collateral attack on the FERC order and must be dismissed.

---

[2] Plaintiffs make much of a footnote in the Third Circuit opinion in *Adorers I* where the Court observed that "the ability of a RFRA claimant to receive damages through the NGA process may indeed bear on 'whether the claims can be afforded meaningful review' under *Thunder Basin*, 510 U.S. at 207. The Adorers did not request money damages in their complaint; hence, we need not reach this issue today." 897 F.3d at 198, n. 11. However, Plaintiffs fail to recognize that a *Thunder Basin* analysis is only necessary if the NGA does not **expressly** preclude this Court's jurisdiction over Plaintiffs' claims. *See New Jersey Conservation Found. v. FERC*, 353 F.Supp.3d 289, 300 (D.N.J. 2018) ("The *Thunder Basin* legal framework is used to determine whether Congress has **impliedly** precluded jurisdiction in the district courts. . .") (emphasis in original)). As the Third Circuit held in *Adorers I* that the NGA does in fact expressly preclude jurisdiction here, I need not undertake a *Thunder Basin* analysis, and the Third Circuit's dicta in the footnote in question is irrelevant to the instant set of facts.

**V.     <u>CONCLUSION</u>**

For all the foregoing reasons, I find this Court lacks jurisdiction over Plaintiffs' Complaint. Therefore, Defendant's Motion to Dismiss will be granted, and Plaintiffs' Complaint will be dismissed with prejudice.